UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,       :
     *Plaintiff*             :
                            :
versus                       :   CIVIL ACTION NO.:
                            :
CHARTER HOME HEALTH, L.L.C.,    :
WANDELL RAY ROGERS, also known as  :   JURY TRIAL
Ray Rogers, and JO ALLYSON WILLIAMS,  :
 also known as Jody Williams,         :
     *Defendants*            :

## COMPLAINT OF THE UNITED STATES OF AMERICA

Plaintiff, United States of America, by its attorneys, on behalf of the United States Department of Health and Human Services (HHS) and its component agency, the Centers for Medicare and Medicaid Services (CMS), and the Social Security Administration (SSA) alleges as follows:

### INTRODUCTION

1.     The United States brings this action to recover statutory damages and civil penalties under the False Claims Act (FCA), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law or equitable theories of payment by mistake of fact, unjust enrichment, restitution and disgorgement of illegal profits, recoupment, and fraud.

2.     The United States' claims against Charter Home Health, L.L.C. (CHH), Jo Allyson "Jody" Williams (Williams) and Wandell Ray "Ray" Rogers (Rogers) (collectively referred to as "defendants") under the FCA arise from false certifications and false, misrepresented, and improper charges contained within claims for payment that the defendants knowingly submitted or caused to be submitted to the Medicare program.  These false or

fraudulent claims were integral to a scheme whereby CHH, by and through Williams and Rogers, paid illegal remunerations and kickbacks to marketers to induce the referral of patients to CHH for home health care services in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. §1320a-7b(b), compliance with which is an express condition for receiving reimbursement from the United States.  The false claims have caused losses to the Medicare program in an amount to be determined at trial.

3.     The United States' claims against defendants under the FCA also are based on claims that defendants knowingly submitted or caused to be submitted to the Medicare program for reimbursement for prohibited payments Williams and Rogers, on behalf of CHH, made to marketers to induce patient referrals.  Those claims for reimbursement and the statements in support of them were also false or fraudulent, because defendant CHH was not entitled to obtain Medicare reimbursement for these illegal payments, which were violations of the Anti-Kickback Statute, compliance with which is an express condition for receiving payment from the United States.

4.     The United States' claims against defendants under the FCA also are based on claims that defendants knowingly caused others, specifically Veronica Green, to submit for payment to the SSA, by aiding and abetting Veronica Green's concealment from the SSA of the fact that Green was earning a substantial amount of income as an independent contract marketer for CHH while she was also receiving disability benefits in violation of the SSA's eligibility requirements.

5.     The United States also brings this action against defendants under common law or equitable theories of payment by mistake of fact, unjust enrichment, and restitution and

2

disgorgement of illegal profits against CHH for recoupment, and against defendants under the common law theory of fraud.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 because all three defendants can be found in, are authorized to transact business in, and are transacting business in the Middle District of Louisiana, and because defendants committed acts within this district that violate 31 U.S.C. § 3729 and the common law.

7.     Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c), because one or more defendants can be found, resides, and transacts business within this district, and all defendants reside in Louisiana.

## PARTIES

8.     Plaintiff United States brings this action on behalf of the Department of Health and Human Services (HHS), which administers the Medicare Program through its component, the Centers for Medicare and Medicaid (CMS), and the Social Security Administration (SSA). HHS and SSA are agencies and instrumentalities of the United States whose activities, operations, and contracts are paid from federal funds.

9.     Defendant CHH, a registered Louisiana limited liability company, is a licensed provider of home health care services operating under Medicare Provider Number 197589 and National Provider Identifier Numbers 1104927508 and 1386820306.  At all times relevant to this Complaint, CHH was in the business of providing home health care services in Baton Rouge, Louisiana and the surrounding area.  Beginning in approximately 2003, Veronica Green became an independent contractor for CHH for the sole purpose of conducting marketing on its behalf.

10.     Defendant Jo Allyson Williams, also known as Jody Williams, is a citizen of the United States and a resident of the State of Louisiana and, at all times relative to this Complaint, was the registered Agent and Manager of CHH, and acted as the Chief Executive Officer and Administrator of CHH.

11.     Defendant Wandell Ray Rogers, also known as Ray Rogers, is a citizen of the United States and a resident of the State of Louisiana and, at all times relative to this Complaint, was a registered Member of CHH, and acted as the Chief Operating Officer and Director of CHH.

12.     At all times relative to this Complaint, Williams and Rogers were ultimately responsible for CHH's operations and its billings to the Medicare program.

13.     At all times relative to this Complaint, Williams and Rogers were ultimately responsible for CHH's posting/reporting to the SSA/IRS/Louisiana Department of Labor any amount of income/earnings paid by CHH to its employees and independent contractors performing bona fide work for CHH.

## STATUTORY AND REGULATORY FRAMEWORK

### The False Claims Act

14.     The False Claims Act (FCA) provides that any person who knowingly:

a.     submits and/or causes to be submitted a false or fraudulent claim to the United States for payment or approval (31 U.S.C. § 3729(a)(1) for claims pending on and before May 19, 2009; 31 U.S.C. § 3729(a)(1)(A) for claims pending on and after May 20, 2009);

b.     makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid (31 U.S.C. § 3729(a)(2) for claims pending on and before June 6, 2008; 31 U.S.C. § 3729(a)(1)(B) for claims pending on and after June 7, 2008);

c.   conspires to get a false or fraudulent claim allowed or paid (31 U.S.C. § 3729(a)(3) for claims pending on and before May 19, 2009; 31 U.S.C. § 3729(a)(1)(C) for claims pending on and after May 20, 2009); or

d.   makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government (31 U.S.C. § 3729(a)(7) for claims pending on and before May 19, 2009; 31 U.S.C. § 3729(a)(1)(G) for claims pending on and after May 20, 2009)[1],

is liable for treble damages and civil penalties[2].

15.   Under the FCA, a person acts "knowingly" if, with respect to information, that person has actual knowledge, acts in deliberate ignorance or reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).

**The Anti-Kickback Statute**

16.   The Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), arose out of congressional concern that payoffs to those who can influence health care decisions would result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population.  To protect the integrity of the program from these difficult to detect harms, Congress enacted a *per se* prohibition against the payment of kickbacks to induce referrals for services paid for by Federal health care programs  See Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

---

[1] On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 (FERA), P.L. 111-21, became law.  Section 4 of FERA revised certain provisions of the FCA.  Congress amended the FCA again as part of the Patient Protection and Affordable Care Act on March 23, 2010.  Because the conduct in this complaint is alleged to have occurred from at least 2003 through 2012, this complaint expressly incorporates both the pre-FERA and post-FERA provisions of the FCA.

[2] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103, (1999), the FCA civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999.

17.     The AKS prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending, or arranging for federally funded medical items and services, including items and services provided under the Medicare program. In pertinent part, the statute states:

(b)     Illegal remuneration

* * *

(2)     whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person –

(A)     to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B)     to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7b(b)(2). Violation of the statute can also subject the perpetrator to exclusion from participation in Federal health care programs and civil monetary penalties of up to $50,000 per violation and three times the amount of remuneration paid. 42 U.S.C. § 1320a-7(b)(7); 42 U.S.C. § 1320a-7a(a)(7).

18.     The AKS contains statutory and regulatory "safe harbors" that immunize certain payments and business practices from liability, including but not limited to the so-called "*bona fide* employee" safe harbor. The AKS does not apply to "any amount paid by an employer to an

employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."  42 U.S.C. § 1320a-7b(b)(3)(B) (emphasis added); See also 42 C.F.R. § 1001.952(i).

19.     In 2010, Congress amended the Anti-Kickback Act to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]."  Patient Protection and Affordable Care Act of 2010 (PPACA), Pub. L. No. 111-148 § 6402(f), 124 Stat. 119, 759.  See also 42 U.S.C. § 1320a-7b(g).

## THE MEDICARE PROGRAM

20.     The Medicare Program (Medicare), established by Title XVIII of the Social Security Act and codified at 42 U.S.C. §§ 1395, *et seq.*, is a federally subsidized, voluntary insurance program administered by the Centers for Medicare and Medicaid Services (CMS), a component of HHS.  Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease.  *See* 42 U.S.C. §§ 426, 426A.  Medicare Part A covers a portion of the cost of certain medical and other health services, including home health care services rendered to qualified beneficiaries.  42 U.S.C. §§ 1395c -1395f.

21.     It accomplishes this through contracts with health care professionals, enrolled as "providers" of covered services, including home health care services, and with "Medicare Administrative Contractors" (MAC) who administer and pay claims from the Medicare Trust Fund. 42 U.S.C. §§ 1395h and 1395u.

22.     To participate in Medicare and bill for home health care services, providers must execute and file a Form CMS-855A enrollment agreement with the Secretary of HHS

("Secretary").  See 42 U.S.C. § 1395cc.  The enrollment agreement requires compliance with the requirements that the Secretary deems necessary for participation in the Medicare program.  Id.

23.     Medicare does not reimburse home health care providers for sales and marketing activities.  See CMS Manual, 15-1 § 2113.2 ("Costs incurred by a home health agency for personnel performing duties … primarily directed toward patient solicitation are unallowable costs for Medicare reimbursement purposes.").

## Submission of Claims for Payment

24.     To be paid and to retain their payments, home health agencies must submit UB-92s (also known as form "HCFA 1450") or the electronic equivalent, pursuant to an Electronic Data Interchange (EDI) Enrollment Form.  They also must submit year-end cost reports.  Providers submit UB-92s or the electronic equivalent at the beginning of the 60-day period for which a physician has certified home health care for a beneficiary.  Home health agencies may receive part of the reimbursement for the care of the patient then and the remainder (subject to revisions to the amount) at the close of the 60-day period after they submit a second UB-92 or its electronic equivalent.  Providers then must submit a cost report to the Medicare program at the end of their fiscal year.  See generally, 42 C.F.R. §§ 484.200 *et seq.*, 405.1801(b)(1), 413.1 *et seq*.

25.     At all times relevant to this Complaint, a material condition for a home health agency's participation in and reimbursement by the Medicare program is that it comply with Federal laws and regulations.  See 42 C.F.R. § 484.12(a)

26.     At all times relevant to this Complaint, including when they submitted year-end cost reports, Medicare providers had a standing obligation to disclose matters affecting their

initial or continued right to Medicare payments and were prohibited from concealing such

matters to retain payments to which they were not entitled.  See, 42 U.S.C.§ 1320a-7b(a)(3).

## DEFENDANTS' STATEMENTS AND SUBMISSIONS
## TO THE MEDICARE PROGRAM

27.     Continued participation in and reimbursement by Medicare required a home

health care provider to comply with the coverage, billing, and payment rules, regulations,

policies, and instructions referenced in paragraphs 21 through 26, above, which established

conditions and limitations on coverage applicable to reimbursement of home health care

services.

28.     At all times relevant to this Complaint, CHH, through Williams and Rogers, was

enrolled as a provider of covered services, and provided such services to Medicare patients either

in its capacity as a direct service provider or through its contractors.

29.     At all times relevant herein, the Medicare provider enrollment agreement

contained a page that required providers to certify, in relevant part, that the provider had read and

understood the penalties for falsifying information printed on the application, and that the

provider understood that any deliberate omission, misrepresentation, or falsification in the

application or contained in any communication to Medicare could be punishable by criminal,

civil, and administrative penalties, including the imposition of fines, civil damages, and/or

imprisonment.

30.     At all times relevant herein, the Medicare provider enrollment agreement also

contained a page that required providers to certify that the provider agreed to abide by the

Medicare laws, regulations, and program instructions applicable to the provider, and that the

provider understood that the payment of a claim by Medicare is conditioned upon the claim and

the underlying transaction being in compliance with such laws, regulations, and program instructions, including, but not limited to, the Anti-kickback statute.

31.     At all times relevant to this Complaint, CHH, through Williams and Rogers, submitted Medicare claims, which included UB-92s or their electronic equivalents and year-end cost reports, for each year from 2003 through 2012, to a MAC called Palmetto Government Benefits Administrators (Palmetto).

32.     Palmetto reviewed and paid the claims in accordance with coverage, billing, and payment rules, regulations, policies, and instructions contained in a series of manuals, including the Medicare Claims Processing Manual and the Medicare Benefit Policy Manual as well as newsletters, bulletins, and other written guides or directives issued to and available to all Part A providers.

33.     On November 6, 1995, Bethel Home Health executed the EDI Enrollment Forms required to make electronic submissions to the Medicare program. The EDI was signed by Cecilia Hayley, Billing Supervisor. Bethel Home Health merged into Home Health Professionals (collectively "predecssors") on February 22, 2011, which then merged into Charter Home Health on February 28, 2011.

34.     CHH, through its predecessors, expressly agreed on its EDI Enrollment Forms that it would submit claims that were "accurate, complete, and truthful," and acknowledged that "the submission of . . . claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim" may be subject to a fine and/or imprisonment under the applicable Federal law.

35.     CHH's annual year-end cost reports for the years 2003 to 2012 each contained the following certification acknowledging the illegality of procuring patient referrals through kickbacks or other unlawful means and attesting that the services identified in the cost reports complied with health care laws:

> Misrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil, and administrative action, fine, and/or imprisonment under federal law.  Furthermore, if services identified in this report were provided or procured through the payment directly or indirectly of a kickback or were otherwise illegal, criminal, civil and Administrative action, fines, and/or imprisonment may result.

> CERTIFICATION BY OFFICER OR DIRECTOR OF THE AGENCY
> I HEREBY certify that I have read the above statement and that I have examined the accompanying Home Health Agency Cost Report and the Balance Sheet and Statement of Revenue and Expenses prepared by
> Charter Home Health L.L.C., 197589
> for the cost report [for the years at issue], and that to the best of my knowledge and belief, it is a true, correct and complete record prepared from the books and records of the provider in accordance with applicable instructions, except as noted.  I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

36.     Ray Rogers signed the above-quoted cost report certifications on CHH's behalf on its cost report for 2003 (as Director of Nursing), 2010 (as Chief Operating Officer, 2011 (as Chief Operating Officer and Director of Nursing, and 2012 (as Director).  Jody Williams signed the cost report certifications on CHH's behalf for 2004, 2005 and 2007 (as Administrator), as well as the reports for 2007, 2008, and 2009 (as Chief Executive Officer).  CHH's cost reports for each of these years contained certifications admonishing that the failure to report could result in all interim payments made pursuant to the UB-92s or electronic equivalents from the beginning of the cost reporting period being deemed as overpayments.  42 U.S.C. § 1395g.

37.     To obtain and retain its Medicare reimbursements, CHH was thus required to certify, and Williams and Rogers did actually certify on CHH's behalf, for each year from 2003 to 2012 that they knew that procuring Medicare referrals through payment directly or indirectly of kickbacks was illegal and that CHH's cost reports were: (1) truthful, i.e., that the cost information contained in the report was true and accurate; (2) correct, i.e., that CHH was entitled to reimbursement for the reported costs in accordance with applicable instructions; (3) complete, i.e., that the cost report was based upon all information known to CHH, and (4) compliant; i.e., that the services identified in the cost report were billed in compliance with the laws governing the provision of health care services, including laws such as the AKS that prohibit procuring patient referrals through kickbacks.

## THE MEDICARE SCHEME

38.     As with many home health agencies, a large percentage of CHH's patients are Medicare beneficiaries, and the Medicare program constituted a significant source of revenue for CHH.

39.     At all times relevant to this Complaint, CHH, through Williams and Rogers, was an authorized home health care provider under Medicare Part A.  As such, during the period of January 1, 2003 through January 2012, Williams and Rogers authorized, directed, or orchestrated CHH's claims submissions to Palmetto.

40.     Beginning in at least 2003 and continuing thereafter through the present, Williams and Rogers conspired, with knowledge and agreement, to direct and did direct the participation of CHH in an illegal scheme designed to benefit CHH and themselves.  Through the scheme, CHH, at the direction and with the knowledge and agreement of Williams and Rogers:

a.     made, and caused others to make, illegal payments to marketers to obtain patient referrals to CHH;

12

b.  created, and caused others to create, false claims and records to hide their scheme (including but not limited to false cost reports, false UB-92s and electronic equivalents);

c.  submitted, and caused others to submit, false or fraudulent claims for reimbursement and records in support of such claims for services CHH rendered to Medicare beneficiaries who were referred to CHH by marketers receiving payments from CHH in violation of the AKS; and

d.  submitted, and caused others to submit, false or fraudulent claims and false statements in support of false claims contained in cost reports to obtain reimbursement for the illegal remuneration CHH paid to marketers to obtain patient referrals to CHH.

41.     Beginning no later than January 2003, and continuing through in or about January 2012, CHH, through Williams and Rogers, knowingly and willfully conspired to offer and pay remunerations, and offered and paid remunerations, including kickbacks, directly and indirectly, overtly and covertly, to marketers employed by CHH, specifically Veronica Green, based on the number of Medicare patients that such persons, specifically Veronica Green, referred to CHH for home health care services for which payment was made in whole or in part under a Federal health care program, namely Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

42.     During the time relevant herein, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, committed numerous overt acts in furtherance of the conspiracy, including making and entering into compensation agreements prohibited by the AKS with various persons, specifically Veronica Green, to induce referrals of Medicare patients to CHH for home health care services.

43.     On July 29, 2003, Williams wrote and issued to Veronica Green a memorandum memorializing and confirming a meeting conducted on July 28, 2003, with Williams and Rogers. At the meeting, Williams, Rogers, Veronica Green, and her husband, Anthony Green, negotiated an agreement in which Veronica Green would be compensated based solely on patient referrals

made by her to CHH.  Because CHH, at the direction and with the knowledge and agreement of Williams and Rogers, paid Veronica Green by referral and not by a set salary or hourly wage, Veronica Green had unlimited earning possibility and opportunity to profit from CHH's billing Medicare for home health care services for patients she referred to CHH.

44.     Other than making patient referrals to and receiving payments from CHH, Veronica Green was not involved with CHH.  Veronica Green was not treated as an employee of CHH and did not provide CHH any covered home health care services.  Rather, Veronica Green was an independent contractor who provided marketing services that were neither a function of nor an integral part of CHH's business operations.  At the same time as Veronica Green was marketing for CHH, she also owned and operated a durable medical equipment (DME) company.

45.     Williams and Rogers knew that the primary purpose of the July 29, 2003 agreement and the payments to Veronica Green was to provide Green substantial financial incentive to refer patients to CHH, so that CHH at the direction and with the knowledge and agreement of Williams and Rogers, could therefore increase its patient census and enrich itself as well as Williams and Rogers.

46.     Pursuant to the July 29, 2003 memo, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, initially structured payments to Veronica Green for the patient referrals as a weekly salary of $750.  The only requirement for Veronica Green's receipt of the $750 salary, as enumerated in the memo, was "16-20 Medicare referrals per month."  However, CHH actually paid Veronica Green varying amounts which were generally based on $250 per patient referral.

47.     During this period of time, Veronica Green referred patients to CHH, and at the direction and with the knowledge and agreement of Williams and Rogers, CHH tracked the number of referrals from Veronica Green and other marketers.

48.     At all times relevant to this Complaint, CHH maintained a variety of reports that identified the payments it made to Veronica Green for the patient referrals she made to CHH. For example, CHH created the following reports:

a.      one document entitled "Charter Home Health, L.L.C. Vendor Type QuickReport 1099 Marketing – Anthony Green" which lists the payments and specific checks issued to, among others, Anthony Green, and which reflects payment for the referral of at least one Medicare patient to CHH for home health care services.

b.      one document entitled "Charter Home Health, L.L.C. Vendor QuickReport – All Transactions" which lists payments and specific checks issued to, among others, Veronica Green and Anthony Green, and which reflects payment for the referral of at least one Medicare patient to CHH for home health care services.

c.      documents entitled "Charter Home Health, Administrative Payroll Reconciliation Form" which reflect several payments to Veronica Green for referrals.

49.     CHH, at the direction and with the knowledge and agreement of Williams and Rogers, between October 13, 2003, and May 14, 2009, paid Veronica Green based on the number of patients she referred to CHH, with checks signed by Williams issued from a CHH bank account made payable to Veronica Green, with the notation of "referrals" in the memo line. The amount of kickback payments was generally in the amount of $250 per patient referral.

50.     In further perpetuation of this conspiracy, beginning in 2006, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and deliberately agreed with each other and others to disguise and conceal the illegal earnings CHH was paying to Veronica Green by making payments intended for Veronica Green in the name of

and under the social security number of her husband, Anthony Green.  At all times relevant herein, Anthony Green was neither an employee nor an independent contractor of CHH.  This arrangement had the illegitimate business purpose of providing another vehicle through which CHH could continue to compensate Veronica Green in amounts that correlated to referrals of Medicare patients to CHH.

51.     In further perpetuation of this conspiracy, Williams and Rogers, on behalf of CHH, knowingly and deliberately agreed with each other and others to falsely issue a 1099 to Anthony Green in the amount of $76,000.00 with intent to disguise payments which, though made to Anthony Green, were in actuality payments to Veronica Green for referrals she made to CHH.

52.     On or about the dates listed below, among other occasions, Veronica Green received compensation in exchange for, and based on the volume or value of, referrals of Medicare patients to CHH for home health care services.  Specifically, the defendants committed the following kickback transactions, among others, in the Middle District of Louisiana, and elsewhere, each of which were in furtherance of the conspiracy:

| Check No. | Date | Bank | Amount | Signatory |
|-----------|------|------|--------|-----------|
| 4548 | 4/23/04 | Regions Bank Acct. # xxxxxx5845 | $1,000 | Williams and Rogers |
| 7979 | 8/04/05 | Regions Bank Acct. # xxxxxx5845 | $1,000 | Williams and Rogers |
| 10891 | 3/17/06 | Regions Bank Acct. # xxxxxx5845 | $2,000 | Rogers |
| 17781 | 4/27/09 | Regions Bank Acct. # xxxxxx5845 | $1,250 | Williams |

53.     On or about the dates listed below, among other occasions, Anthony Green received payment, intended for Veronica Green, in exchange for, and based on the volume or value of, Veronica's referrals of Medicare patients to CHH for home health care services.

16

Specifically, the defendants committed the following kickback transactions, among others, in the Middle District of Louisiana, and elsewhere, each of which were in furtherance of the conspiracy:

| Check No. | Date | Bank | Amount | Signatory |
|-----------|------|------|--------|-----------|
| 10912 | 3/23/06 | Regions Bank Acct. # xxxxxx5845 | $1,000 | Williams |
| 14134 | 11/09/07 | Regions Bank Acct. # xxxxxx5845 | $1,000 | Williams |
| 15161 | 7/18/08 | Regions Bank Acct. # xxxxxx5845 | $1,750 | Williams |
| 17823 | 4/24/09 | Regions Bank Acct. # xxxxxx5845 | $750 | Williams |

54.     The payments identified in Paragraphs 52 and 53 above violated the AKS. Because Veronica Green was an independent contract marketer, the payments identified above were not part of a bona fide employment relationship between CHH and Veronica Green and were not protected by the AKS's statutory or regulatory safe harbors.

55.     In further perpetuation of this conspiracy, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, submitted claims and was reimbursed for home health care services purportedly provided to patients referred to it by Veronica Green who became or were retained as patients of CHH, or were again admitted as patients, in connection with the payment of kickbacks to Veronica Green in violation of the AKS.  These claims included UB-92s or their electronic equivalents and year-end cost reports for each year from 2003 through 2012.

56.     Specifically, the following Medicare claims submitted by CHH for patients that were referred by Veronica Green and other marketers were false:

17

| Claim No. | Benficiary Name | Date Submitted | Amount Submitted | Amount Paid |
|---|---|---|---|---|
| 20534603060805 | M. L. | 12/09/05 | $1,795 | $1,665 |
| 20621604231305 | S. R. | 08/03/06 | $3,315 | $2,013 |
| 20709504125405 | B. R. | 04/04/07 | $2,180 | $1,984 |
| 20803804380405 | S. R. | 02/06/08 | $2,475 | $1,972 |
| 20907822208908 | S. R. | 03/19/09 | $5,420 | $3,507 |
| 21001102294705 | E. W. | 01/11/10 | $1,262 | $1,315 |
| 21113602590605 | E. W. | 05/16/11 | $947 | $1,666 |

### FALSE AND FRAUDULENT CLAIMS, RECORDS, AND STATEMENTS

57. Between at least in or about July 2003 and continuing up and until at least September 2012, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, submitted and caused the submission of claims for payment to the Medicare program with the knowledge that those claims contained items or services that stemmed from illegal remuneration that had been paid to marketers, specifically Veronica Green, for home health care services purportedly provided to patients referred to it by Veronica Green who became or were retained as patients of CHH, or were again admitted as patients.  These claims included UB-92s or their electronic equivalents and year-end cost reports for each year from 2003 through 2012.

58. In addition, between at least in or about July 2003 and continuing up and until at least 2012, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, submitted and caused the submission of claims for payment to the Medicare program with the knowledge that those claims contained items or services, specifically, the amounts unlawfully paid to Veronica Green and other marketers, that stemmed from illegal remuneration paid to marketers, specifically Veronica Green, for referrals in violation of the AKS.  These claims included UB-92s or their electronic equivalents and year-end cost reports for each year from 2003 through 2012.

59.     CHH was prohibited from submitting claims to Medicare for items or services resulting from violations of the AKS.  Such claims were false or fraudulent within the meaning of the FCA.  See 42 U.S.C. § 1320a-7b(g); 31 U.S.C. § 3729, *et seq.*

60.     To procure payment on these false or fraudulent claims, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and falsely stated, in its respective provider enrollment agreement, on its UB-92s, its EDI enrollment form, and its year-end cost reports that the services for which it sought reimbursement were provided in compliance with all laws (including the AKS), regulations, program instructions, and conditions of participation in Medicare.  See supra Paragraphs 22 through 30.

61.     CHH was not entitled to be paid by Medicare for the amounts it paid to Veronica Green and other marketers as described in paragraphs 52 and 53.  Claims for reimbursement of those amounts are false and fraudulent.

62.     CHH was not entitled to be paid by Medicare for services provided to patients referred by Veronica Green and other marketers as described in paragraphs 55 and 56.  Claims for reimbursement of those amounts are false and fraudulent.

63.     CHH, at the direction and with the knowledge and agreement of Williams and Rogers, also violated the FCA, by knowingly making, or causing to be made, and using, or causing to be used, false statements to procure and maintain Medicare money to which they were not entitled.  CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and falsely stated and/or certified, on its UB-92s and its EDI enrollment form, and its year-end cost reports, that the information contained in each report and form was true, accurate, and complete, and that the services identified in them were provided in

19

compliance with Federal law, including the prohibitions against illegal remuneration to Veronica Green and other marketers.

64.     The United States anticipates that further discovery in this case will reveal that CHH, through Williams and Rogers, submitted additional claims to Medicare with knowledge that the subject items or services resulted from violations of the AKS.  The United States reserves the right, at trial or in any other proceeding, to present evidence of such other false or fraudulent claims.

65.     The United States specifically alleges that CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and/or acting in reckless disregard or deliberate ignorance of the truth thereof, billed to the Medicare program an unknown number of false and/or improper claims between January 1, 2003 through and at least 2012.  Moreover, in reliance on the representations made in the billings submitted by CHH, at the direction and with the knowledge and agreement of Williams and Rogers, Medicare paid for claims that were improper and unallowable.

66.     In addition to the fraudulent schemes detailed above, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, also knowingly assisted Veronica Green in perpetrating fraud on the SSA, as described below.

## THE SOCIAL SECURITY SCHEME

67.     The Social Security Act, 42 U.S.C. § 301 *et seq.*, was enacted in 1935 to provide for the general welfare by establishing a system of federal benefits.  The SSA pays Title II disability insurance benefits to persons (and their minor children) medically unable to engage in substantial gainful activity (SGA) for a continuous period of at least twelve months. A substantial gainful activity is defined as the performance of significant physical and/or mental

work activities for pay, and is a material factor in the determination of entitlement to receive disability.

68.     In 2003, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, entered an agreement with Veronica Green whereby CHH would pay Veronica Green for marketing and recruiting patients for home health care services to be provided by CHH.  During the same time period, Veronica Green also opened and/or operated AYS Medical Supplies, a supplier of durable medical equipment.

69.     On August 31, 2004, while employed by CHH, Veronica Green applied for monthly disability insurance benefits for herself and her two dependent children.  In her application, Veronica Green did not report that she was working at an SGA level, earning a substantial amount of income as an independent contract marketer for CHH.

70.     As part of the application process, Veronica Green agreed, under oath, to notify the SSA: (1) if her medical condition improved so that she would be able to work, or (2) if she went to work whether as an employee or a self-employed person.

71.     Veronica Green began receiving social security disability benefits retroactive to March 1, 2004, and during her disability application process and throughout the time period she was receiving social security disability benefits, Veronica Green was holding herself out as disabled to the SSA.

72.     Veronica Green concealed and/or failed to disclose to the SSA the fact that she was working for CHH at substantial gain activity level during the entire time she was receiving disability benefits.  As a result, Veronica Green received approximately $152,627 for herself and her two dependent children to which she was not entitled because she was working at a substantial gainful activity level.

73.     On February 23, 2011, Veronica Green pled guilty to a Bill of Information filed in this district, which charged concealment of a material fact affecting eligibility for Social Security benefits based on the scheme outlined above.  *United States v. Veronica Ann Lewis Green,* No. 11-CR-17 (MDLA).

74.     On June 22, 2011, Veronica Green was sentenced to 30 months of incarceration and was ordered to pay restitution of $152,627 to the SAA.

75.     During the time relevant herein, CHH, through Williams and Rogers, knew that Veronica Green was receiving social security disability benefits and was aware of the restrictions and limitations placed on Veronica Green concerning amounts of earnings she was allowed to continue receiving disability benefits.

76.     Beginning in or about August 2004, through January 2011, to increase its Medicare patient census by continuing to pay for and receive referrals from Veronica Green, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and deliberately conspired with Veronica Green and others, to engage in a scheme to defraud the SSA by aiding Veronica Green in concealing her true work status.  CHH, through Williams and Rogers, committed numerous overt acts in furtherance of the conspiracy, including those described below.

77.     CHH, at the direction and with the knowledge and agreement of Williams and Rogers, directed and instructed others, or otherwise initiated and/or participated in an agreement to conceal and fail to disclose to the SSA the fact that Veronica Green was earning a substantial amount of income as an independent contract marketer for CHH while she was also receiving disability benefits.

78.     At the time of her application for and/or during the period in which she received social security disability benefits, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, failed to post and report to the SSA/IRS/Louisiana Department of Labor any amount of income/earnings it paid to Veronica Green without issuing W-2 statements, failed to file Forms 1099-MISC and 941, and failed to include Veronica Green in its Employer Wage Records.  Additionally, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, maintained no employee file or record on Veronica Green.  Further, CHH had no file or record or other evidence of the alleged employment of Anthony Green.

79.     In furtherance of the conspiracy, beginning in 2006, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and deliberately agreed with each other and others to aid and abet Veronica Green in disguising and concealing from the SSA the illegal earnings CHH was paying to Veronica Green by making payments intended for Veronica Green in the name of and under the social security number of her husband, Anthony Green.

80.     In furtherance of the conspiracy, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly and deliberately agreed with each other and others to falsely issue to Anthony Green an IRS Form 1099 in the amount of $76,000.00 with the intent to disguise payments which, though made to Anthony Green, were in actuality payments to Veronica Green for referrals she made to CHH.

81.     During the period of time that Veronica Green was receiving SSA disability benefits, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, issued 194 checks, 72 payable to Veronica Green and 122 payable to Anthony Green, totaling $221,322.81.

82. At all times relevant to this Complaint, CHH engaged in a fraudulent course of conduct that caused the United States to honor false claims presented for payment to the Treasury of the United States by Veronica Green.  Based on false information provided by Veronica Green and CHH, the SSA continued to pay disability benefits to Veronica Green on a monthly basis.  Such action by the SSA was a necessary and foreseeable consequence of CHH's conduct in not issuing W-2 statements, not filing Forms 1099-MISC and 941, and not including Veronica Green in any of its Employee Wage Records concerning the payments CHH made to Veronica Green identified in Paragraphs 52 and 53, as well as in its intentional falsification of a 1099 in the name of Veronica Green's husband, Anthony Green.

83. CHH's fraudulent conduct assisted in Veronica Green's receipt of approximately $152,627.00 in disability benefits to which she was not entitled.  The SSA would not have issued any checks to Veronica Green in payment of disability benefits had it known that Veronica Green was earning substantial income from CHH and was otherwise not qualified nor entitled to receive disability benefits.  Accordingly, the claims for payment made by Veronica Green to the SSA were materially false for purposes of the False Claims Act, 31 U.S.C. § 3729, *et seq.* and therefore, CHH's assistance and participation in Veronica Green's submission of these claims to the SSA violated the FCA.

**DAMAGES**

84. The United States was damaged because of the acts of CHH, at the direction and with the knowledge and agreement of Williams and Rogers, in submitting, or causing to be submitted, false claims, statements, and records in that the United States paid reimbursements to CHH that CHH was not entitled to receive.

## FIRST CAUSE OF ACTION

(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1) for claims pending on and through May 19, 2009)
(31 U.S.C. § 3729(a)(1)(A) for claims pending on and after May 20, 2009)
Medicare

85.     The United States realleges and incorporates by reference the allegations

contained in paragraphs 1 through 65 of this Complaint.

86.     By virtue of the acts described above with respect to CHH's payment of

kickbacks to Veronica Green, in exchange for the referral of Medicare patients to CHH, CHH, at

the direction and with the knowledge and agreement of Williams and Rogers, knowingly

presented or caused to be presented false or fraudulent claims for payment or approval to the

United States, in violation of the FCA.

87.     The false claims for payment or approval presented or caused to be presented by

CHH, through Williams and Rogers, include but are not limited to, all claims submitted to

Medicare by CHH for services rendered to patients referred to CHH by Veronica Green who

received kickbacks from CHH in exchange for the referral of goods or services.

88.     By virtue of the false or fraudulent claims of CHH, the United States has suffered

actual damages and therefore is entitled to treble damages under the False Claims Act, in an

amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation, and

other monetary relief as appropriate.

## SECOND CAUSE OF ACTION

(False Claims Act:  Making or Using False Record or Statement to Cause Claim to Be Paid)
(31 U.S.C. § 3729(a)(2) for claims pending before and through June 6, 2008))
(31 U.S.C. § 3729(a)(1)(B) for claims pending on and after June 7, 2008)
Medicare

89.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint.

90.     By virtue of the acts described above with respect to CHH's repeated certifications that it complied with all laws, regulations, and guidance concerning proper practices for Medicare providers, CHH, at the direction and with the knowledge and agreement of Williams and Rogers, knowingly made, used, or caused to be made or used, materially false records and/or statements—including false records and/or statements regarding CHH's compliance with the AKS—to procure approval and payment for false or fraudulent claims by the United States.

91.     The materially false records and/or statements knowingly made, used, or caused to be made or used by CHH, include but are not limited to, all provider/supplier enrollment applications, UB-92s, EDI enrollment forms, and year-end cost reports signed by CHH, through Williams and Rogers, in which CHH certified that it complied with all laws, regulations, and guidance concerning proper practices for Medicare providers/suppliers.

92.     By virtue of the false or fraudulent claims of CHH, the United States has suffered actual damages and therefore is entitled to treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation, and other monetary relief as appropriate.

## THIRD CAUSE OF ACTION

(False Claims Act; Making or Using False Record
or Statement to Avoid an Obligation to Refund)
(31 U.S.C. § 3729(a)(7) for claims pending on and through May 19, 2009)
(31 U.S.C. § 3729(a)(1)(G) for claims pending on and after May 20, 2009)
Medicare

93.     The United States realleges and incorporates by reference the allegations

contained in paragraphs 1 through 65 of this Complaint.

94.     By virtue of the acts described above with respect to CHH's repeated

certifications that it would comply with all laws, regulations, and guidance concerning proper

practices for Medicare providers, CHH, at the direction and with the knowledge and agreement

of Williams and Rogers, knowingly made, used, or caused to be made or used materially false

records and/or statements to conceal, avoid, or decrease an obligation to pay or transmit money

or property to the United States, including the overpayments and reimbursements that CHH

knowingly and wrongfully received and retained for items and services that resulted from

violations of the AKS.

95.     The materially false records and/or statements knowingly made, used, or caused

to be made or used by CHH, include but are not limited to, all provider/supplier enrollment

applications, UB-92s, EDI enrollment forms, and year-end cost reports signed by CHH, through

Williams and Rogers, in which CHH certified that it would comply with all laws, regulations,

and guidance concerning proper practices for Medicare providers/suppliers.

96.     By virtue of the false or fraudulent claims of CHH, the United States has suffered

actual damages and therefore is entitled to treble damages under the False Claims Act, in an

amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation, and

other monetary relief as appropriate.

## FOURTH CAUSE OF ACTION

(False Claims Act; Conspiring to Submit False Claims)
(31 U.S.C. § 3729(a)(3) for claims pending on and before May 19, 2009)
(31 U.S.C. § 3729(a)(1)(C) for claims pending on and after May 20, 2009)
Medicare

97.     The United States realleges and incorporates by reference the allegations

contained in paragraphs 1 through 65 of this Complaint.

98.     By virtue of the acts described above with respect to agreements entered into by

CHH and Veronica Green for the payment of kickbacks and illegal remuneration to Veronica

Green in exchange for the referral of Medicare patients to CHH, CHH, at the direction and with

the knowledge of Williams and Rogers, and Veronica Green, conspired together to defraud the

United States by submitting false or fraudulent claims for reimbursement from the United States

for monies to which they were not entitled, in violation of the FCA.

99.     By virtue of Defendants' conspiracy to defraud the United States, the United

States has suffered actual damages and therefore is entitled to treble damages under the False

Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for

each violation, and other monetary relief as appropriate.

## FIFTH CAUSE OF ACTION

(Payment Under Mistake of Fact)
Medicare

100.    The United States realleges and incorporates by reference the allegations

contained in paragraphs 1 through 65 of this Complaint.

101.    This is a claim for the recovery of monies paid by the United States to CHH and

Williams and Rogers as a result of mistaken understandings of fact.

102.     As more fully discussed above, CHH made false representations and records concerning (1) its compliance with federal law, and (2) the truth, accuracy, and completeness of its claims for reimbursement, all of which were material to the United States' decision to reimburse CHH for services under the Medicare program.

103.     The United States, acting in reasonable reliance on CHH's representations regarding its certifications and compliance with federal law, and the truthfulness, accuracy, and completeness of its claims, reimbursed CHH for claims to which it was not entitled, thereby resulting in damages to the United States in an amount to be determined at trial.

104.     Williams and Rogers received payments to which they were not entitled, including but not limited to salary payments and/or other distributions, from CHH as a result of the materially false statements and records and false or fraudulent claims discussed more fully above.  Williams and Rogers were therefore paid by mistake as a result of the Kickback Scheme in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
(Unjust Enrichment)
Medicare

105.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint.

106.     This is a claim for the recovery of monies by which CHH and Williams and Rogers have been unjustly enriched at the expense of the United States.

107.     As discussed more fully above, the United States paid CHH for items and services that resulted from violations of the AKS.

108.     By causing the United States to reimburse such falsely and fraudulently billed claims and by receipt of such federal funds, CHH was unjustly enriched to the detriment of the United States in an amount to be determined at trial.

109.     As a result of the materially false statements and records and false or fraudulent claims discussed more fully above, Williams and Rogers received payments from CHH, including salary payments and/or other distributions, to which they were not entitled and which they should not, in good conscience, be allowed to retain.  Williams and Rogers were therefore unjustly enriched to the detriment of the United States in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
(Restitution and Disgorgement of Illegal Profits,
For Imposition of a Constructive Trust and an Accounting)
Medicare

110.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint.

111.     This is a claim for restitution and disgorgement of profits earned by CHH, because of illegal remunerations CHH, at the direction and with the knowledge and agreement of Williams and Rogers, paid or caused to be paid to Veronica Green and other marketers.

112.     CHH, at the direction and with the knowledge and agreement of Williams and Rogers, concealed its illegal activity through false statements, claims, and records, and failed to abide by its duty to disclose such information to the United States.

113.     The United States did not detect the illegal conduct of defendants CHH, Williams, and Rogers.

114.     This Court has the equitable power to, among other things, order CHH to disgorge the entire profits that CHH, at the direction and with the knowledge and agreement of Williams

and Rogers, obtained from business generated as a result of its violations of the AKS and the FCA.

115.     By this claim, the United States requests a full accounting of all revenues (and interest thereon) accruing to CHH because of referrals from Veronica Green and other marketers to whom CHH paid illegal remuneration, and restitution and disgorgement of all profits earned and/or imposition of a constructive trust in favor of the United States on those profits.

## EIGHTH CAUSE OF ACTION
(Recoupment of Overpayments)
Medicare

116.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint.

117.     This is a claim for recoupment, for the recovery of monies unlawfully paid by the United States to CHH contrary to statute or regulation.

118.     The United States paid CHH certain sums of money to which it was not entitled, and CHH is thus liable under the law of recoupment to account for and to return such amounts, which are to be determined at trial, to the United States.

## NINTH CAUSE OF ACTION
(Common Law Fraud)
(Medicare)

119.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint.

120.     The allegations within this Complaint establish at a minimum that Medicare made payments to CHH, based upon misrepresentations of material facts with respect to services incorrectly and/or improperly billed on CHH's UB-92s and their electronic equivalents and cost

reports.  CHH, at the direction and with the knowledge and agreement of Williams and Rogers, made such representations with knowledge of their falsity or reckless disregard for their truth.

121.     In consequence of the acts set forth above, by reason of those payments made by the United States, acting in reasonable reliance on the alleged accuracy and truthfulness of the information contained in the claims, the United States made payments to it detriment for such false claims in such amounts, which are to be determined at trial.  CHH, Williams, and Rogers are thus liable to account for and to pay such amounts, which are to be determined at trial, to the United States.

**TENTH CAUSE OF ACTION**
(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1) for claims pending on and before May 19, 2009)
(31 U.S.C. § 3729(a)(1)(A) for claims pending on and after May 20, 2009)
Social Security

122.     The United States realleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 and 66 through 83 of this Complaint.

123.     By virtue of the acts described above with respect to CHH's assistance and participation in Veronica Green's submission of claims to the SSA for disability benefits to which she was not entitled, CHH knowingly caused false or fraudulent claims to be presented to the United States for payment or approval.

124.     The false claims for payment or approval caused to be presented by CHH include, but are not limited to, all claims, in the form of checks submitted to the SSA by Veronica Green for payment of disability benefits.

125.     The United States, unaware of the foregoing circumstances and conduct of CHH, and in reliance upon the false or fraudulent claims that CHH caused to be submitted to the United States, paid these claims to Veronica Green.

126.     By reason of these claims, the United States suffered damages and is therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## ELEVENTH CAUSE OF ACTION
(False Claims Act:  Making or Using False
Record or Statement to Cause Claim to be Paid)
(31 U.S.C. § 3729(a)(2) for claims pending on and before June 6, 2008)
(31 U.S.C. § 3729(a)(1)(B) for claims pending on and after June 7, 2008)
Social Security

127.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 15 and 66 through 83 of this Complaint.

128.     By virtue of the acts described above with respect to CHH's issuance of a Form 1099-MISC in the name of Anthony Green for the amount of $76,000.00, CHH knowingly made and used or caused to be made and used a materially false record or statement to get false or fraudulent claims paid or approved by the United States.

129.     The false claims for payment or approval caused to be presented by CHH include, but are not limited to, all checks that Veronica Green submitted to Treasury for payment of disability benefits.

130.     The false record or statement includes the Form 1099-MISC referred to above which was designed to help conceal from the SSA the payments CHH was actually making to Veronica Green for patient referrals.

131.     By virtue of the materially false records and/or false statements knowingly made or caused to be made by CHH, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## TWELFTH CAUSE OF ACTION

(False Claims Act; Conspiring to Submit False Claims)
(31 U.S.C. § 3729(a)(3) for claims pending on and before May 19, 2009)
(31 U.S.C. § 3729(a)(1)(C) for claims pending on and after May 20, 2009)
Social Security

132.     The United States realleges and incorporates by reference the allegations

contained in Paragraphs 1 through 15 and 66 through 83 of this Complaint.

133.     By virtue of the acts described above with respect to CHH's assistance and

participation in aiding Veronica Green in concealing her true work status from the SSA to allow

Veronica Green to continue receiving disability benefits to which she was not entitled, CHH, at

the direction of and with the knowledge of Williams and Rogers, conspired with Veronica Green

to defraud the United States and knowingly caused false or fraudulent claims to be presented to

the United States for payment or approval in violation of the FCA.

134.     The false claims for payment or approval caused to be presented by CHH include,

but are not limited to, all claims, checks submitted to the SSA by Veronica Green for payment of

disability benefits.

135.     The United States, unaware of the foregoing circumstances and conduct of CHH,

and in reliance upon the false or fraudulent claims that CHH caused to be submitted to the

United States, paid these claims to Veronica Green.

136.     By virtue of Defendants' conspiracy to defraud the United States, the United

States has suffered actual damages and therefore is entitled to treble damages under the False

Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for

each violation, and other monetary relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against defendants, as follows:

1.      On the First, Second, Third, Fourth, Tenth, Eleventh, and Twelfth Causes of Action against the defendants under the False Claims Act, as amended, for treble the amount of harm the United States has sustained as a result of the defendants' unlawful conduct; for civil penalties of $11,000 for each false and fraudulent claim submitted to the United States; for all costs associated with prosecuting this civil action; and for all other relief the Court deems just and equitable.

2.      On the Fifth and Sixth Causes of Action against the defendants for payment by mistake and unjust enrichment, for the damages sustained and/or amounts by which these defendants were unjustly enriched or by which these defendants retained illegally obtained monies, plus interest, costs, and expenses, and for all other relief the Court deems just and equitable.

3.      On the Seventh Cause of Action against the defendants for an accounting of all revenues unlawfully obtained by defendants, the imposition of a constructive trust upon such revenues, and the restitution and disgorgement of the illegal profits obtained by these defendants and for all other relief the Court deems just and equitable.

4.      On the Eighth Cause of Action against CHH for recoupment, for the monies illegally obtained by CHH, plus interest, costs, and expenses, and for all other relief the Court deems just and equitable.

5.      On the Ninth Cause of Action against CHH, Williams, and Rogers, for common law fraud, for compensatory and punitive damages in an amount to be determined, together with costs and interest, and for all other relief the Court deems just and equitable.

Respectfully submitted,

J. WALTER GREEN
ACTING UNITED STATES ATTORNEY


/s/ Catherine M. Maraist
Catherine M. Maraist, LBN 25781
James P. Thompson, LBN 21090
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: catherine.maraist@usdoj.gov